IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KIMBERLY-CLARK CORPORATION and  )
KIMBERLY-CLARK GLOBAL SALES,     )
LLC,                             )
                                 )
            Plaintiff,           )
                                 )      C.A. No.
        v.                       )
                                 )
DUO, LLC,                        )
                                 )
            Defendant.           )

## COMPLAINT

Plaintiffs, Kimberly-Clark Corporation and Kimberly-Clark Global Sales, LLC (collectively, "Kimberly-Clark"), by and through its attorneys, Gibson, Dunn & Crutcher LLP, and Ashby & Geddes, hereby alleges as follows:

## NATURE OF THE COMPLAINT

1.      This case involves products known as "flushable wipes"—moist, non-woven fabrics designed to break down in home and municipal sewage systems after use.  Plaintiff, Kimberly-Clark, has invested an extraordinary amount of time and money to create a state-of-the-art flushable wipe that provides the consumer with a product that provides reliable cleaning power, while also physically and chemically designed to soften and dissolve when flushed.  As a result of this investment, Kimberly-Clark has acquired over 30 patents related to flushable wipes and has become an industry leader in the development and sale of flushable products.

2.      Over the last several years, Defendant Duo LLC has spread unsubstantiated and disparaging lies about Kimberly-Clark's flushable wipe products; engaged in a campaign of disinformation about its own product—including seeking unjustifiably to capitalize on domestic consumer patriotism by falsely claiming that its own foreign-made products are actually "made in

the U.S.A."; and infringed Kimberly-Clark's patented technology—all to Plaintiff's detriment. Through this action, Kimberly-Clark now seeks both an injunction to put a stop to Defendant's ongoing unlawful activity, and an award of monetary damages in an amount to be proven at trial to compensate it (to the extent possible) for the harm that it has suffered as a result of this unlawful activity.

3.      Established in 1872, Kimberly-Clark is one of the nation's leading consumer-product companies, with long-standing ownership of many prominent brands—including, without limitation, Kleenex®, Scott®, Cottonelle®, Huggies®, and Pull-Ups®.  Kimberly-Clark is an industry leader in promoting flushable wipes as an indispensable part of any personal care routine: as explained, it has invested millions of dollars in developing patented flushable-wipe technology.

4.      Founded in 2009, Defendant, a relative newcomer to the consumer-product industry, sells a "Tidymates"-branded system that it claims facilitates the use of flushable wipes in conjunction with toilet paper.  This Tidymates system includes a canister that hangs from a toilet paper holder, coupled with flushable wipes.  Below is a true and correct copy of an image taken from the Defendant's website, which purports to describe and illustrate the components of this Tidymates system:



5.    Defendant    also    owns    and    operates    a    publicly-accessible    website

(www.buytrio.com) that it uses to engage in commercial advertising or promotion.

6.      Defendant has used the www.buytrio.com website to disseminate multiple false and materially misleading statements about "Leading Brands" of wet wipes—a term that reasonable consumers understand to encompass products that Kimberly-Clark sells under popular and well-established brand names like Scott® and Cottonelle®.  At a minimum, Defendant has made the false and materially misleading assertion that "Leading Brands" like Scott® and Cottonelle®:

      a.     Use "known harmful preservatives";

      b.     "[C]ontinue to use nasty preservative chemicals, despite the allergic outbreaks and the cancer-causing evidence associated with them";

      c.     Have not been "Independently tested as SAFE for sewer and septic systems"; and

      d.     Will "clog your plumbing."

7.      None of these disparaging claims are true or substantiated, and all of them are intentionally designed to mislead consumers into falsely believing that using Kimberly-Clark's products might result in negative environmental and/or health consequences.

8.      Defendant also makes unsubstantiated and factually dubious claims about the alleged comparative benefits of its own products. Specifically, Defendant claims that its own Tidymates wipes are "Good For Your Plumbing And The Environment"—without providing any substantiation for these assertions, and despite the facial implausibility of the claim that Defendant's product is actually *affirmatively* "[g]ood [f]or" a consumer's plumbing and/or the general environment.

9.      Perhaps most perniciously, however, Defendant also used the www.buytrio.com website to communicate that its products are "Made in the U.S.A."—despite the fact that

significant components of Defendant's products originate in *China*.  Through this false statement, Defendant attempts to unfairly and unjustly profit off of general domestic consumer patriotism— even though Defendant actually saves money by secretly utilizing foreign manufacturers—and then lying about the origin of its products to consumers.

10.     The unlawful activity does not stop there.  Although Defendant calls its product "proprietary," the wet wipe component of this Tidymates system actually directly infringes technology *patented by Kimberly-Clark*—technology that is designed to improve the uniformity and flushability of the wipes.  This patented technology reduces skin irritation and potential wipe contamination while simultaneously increasing both the strength and consistency of the wipe.  In exchange for publicly disclosing the technology that makes these improvements possible, the United States Patent Office has recognized this innovation by granting Kimberly-Clark multiple patents.

## THE PARTIES

11.     Kimberly-Clark Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Irving, Texas.

12.     Kimberly-Clark Global Sales, LLC is a Wisconsin corporation having its principal place of business in Neenah, Wisconsin.  Kimberly-Clark Global Sales is in the business of developing and selling various products—including, but not limited to, flushable wipes—under widely-recognized brand names such as Cottonelle® and Scott®.

13.     Defendant Duo, LLC ("Defendant") is a limited liability corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Solana Beach, California.  Defendant utilizes Harvard Business Services, Inc, 16192 Coastal Highway, Lewes, DE 19958 as its agent in Delaware.

## JURISDICTION AND VENUE

14.     The claims in this case arise under the Lanham Act (15 U.S.C. § 1125(a)) as well as under the Patent Laws of the United States (35 U.S.C. § 1, *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284 and 285). This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121(a), and 28 U.S.C. §§ 1331 & 1338.

15.     This Court also has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).

16.     This Court has general personal jurisdiction over Defendant, because Defendant is a corporate entity that is incorporated under the laws of the State of Delaware.  *See* 10 Del C. § 3114.  Furthermore, this Court has specific personal jurisdiction over Defendant pursuant to 10 Del. C. § 3104, because the unlawful conduct complained of herein has caused, and will continue to cause, injury to Kimberly-Clark within this District.  Defendant regularly and systematically directs electronic activity into the State of Delaware through its fully interactive website (www.buytrio.com).  Furthermore, upon information and belief, Defendant has sold infringing Tidymates-branded products to consumers in Delaware, and consumers in Delaware have also encountered and been deceived by the false and misleading statements that Defendant chooses to display on its website.  Defendant's President has admitted that he sells products all across the country and has not taken any steps to restrict sales to any particular state like Delaware.

17.     The exercise of general and specific personal jurisdiction over Defendant in this case fully comports with the Due Process Clause of the Fifth Amendment to the United States Constitution.  *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).

18.     Venue is proper in Delaware because both Kimberly-Clark Corporation and Defendant are incorporated in the State of Delaware. *See* 21 U.S.C. §§ 1391(b)(1) & 1400(b).

Venue is also proper in this District, under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this District.

## GENERAL ALLEGATIONS

## DEFENDANT HAS PUBLICLY DISSEMINATED FALSE NEGATIVE STATEMENTS ABOUT KIMBERLY CLARK'S PRODUCTS

19.     In connection with its own business dealings, Defendant owns and operates an interactive website located at the URL www.buytrio.com, that Defendant uses for the commercial promotion and advertising of the products that it offers for sale.  Defendant uses its website to offer its products for sale to consumers located across the United States—including Delaware. Consumers can use Defendant's website to purchase goods via the internet directly from Defendant.  On information and belief, Defendant has sold products in interstate commerce through this website since at least 2013.  Defendant also makes additional sales through various major third-party retailers, including Amazon and Staples.

20.     Defendant's www.buytrio.com website appears dedicated, in large part, to falsely smearing Kimberly-Clark's products by publicly disseminating negative misinformation about the health and safety of Plaintiff's flushable wipes.  These false statements are plainly aimed at harming Kimberly-Clark both by redirecting sales from Kimberly-Clark to Defendant via a misinformation campaign, and also by impairing Kimberly-Clark's general hard-earned reputation and goodwill among consumers.

21.     Defendant's website compares Defendant's Tidymates system to other "Leading Brands."  The reference to "Leading Brands" is likely to be understood by significant numbers of consumers to encompass and incorporate various products that Kimberly-Clark sells under popular and well-established brand names like its famous Scott® and Cottonelle® brands. Defendant's

President has specifically acknowledged that Kimberly-Clark is one of the largest and best-known companies in Duo LLC's area.

22.     Indeed, in both a publicly-available January 2017 Investor Presentation created by Defendant and available online, and in related supplier agreements, *Defendant itself listed Kimberly-Clark as one of only two specific competitors in the relevant marketspace* (with a third general category of competitors being "private label").

23.     Below is a true and correct copy of an image from Defendant's January 20, 2017 Investor Presentation:

## Competitive Landscape

| Value | Trio® | Kimberly Clark | Proctor & Gamble | Private Label |
|---|---|---|---|---|
| **BEST Location for users** | + | -- | -- | -- |
| **NO Shelf Space** | + | -- | -- | -- |
| **ON the market** | + | -- | -- | N/A |
| **Distribution** | + | + | + | + |
| **Patented** | + | + | + | N/A |
| **Flushable** | + | ? | ? | ? |

*See* "**Exhibit A, at 15.**"

24.     Although **Exhibit A** purports on its face to be "CONFIDENTIAL," this document, which is attached hereto (and excerpted immediately above), is publicly-available online. Accordingly, on information and belief, Kimberly-Clark has reason to believe in good faith that this document is *not* in fact "confidential," because it can be found through use of public search engines such as Google and Bing, and it is readily available and freely accessible to any interested member of the general public via the Internet.

25.     Furthermore, given the high profile of Kimberly-Clark's well-known Cottonelle® and Scott® brand flushable wipes in the marketplace, a significant portion of the intended audience

for the statements at issue that Defendant chooses to display on its website—i.e., the segment of domestic consumers who are potentially interested in purchasing flushable wipes—would understand that any mention of "Leading Brands" encompasses Kimberly-Clark's flushable wipes products.

26.     From the "home" page of Defendant's www.buytrio.com website, any member of the public visiting that website can click on a tab that is labelled, "The Tidymates Difference" and thereby access a subpage hosted on that website.  Below is a true and correct copy of an image of that subpage, which is located at URL www.buytrio.com/the-tidymates-difference/.  The chart below shall be referenced herein as the "Tidymates Difference Image."



***Defendant Falsely Claims That Kimberly-Clark's Products Contain "Known***

***Harmful Preservatives [and] Chemicals" "Associate[d]"***

***with "Allergic Outbreaks [and] Cancer"***

27.     On the right hand side of the Tidymates Difference Image shown above in paragraph 26 is a chart which lists several different factors that Defendant claims distinguish its own Tidymates product from other "National Leading Brands" (a term that reasonable consumers understand to encompass Kimberly-Clark's products). One of the factors listed in this chart is whether the products in question "DO NOT use known harmful preservatives." There is a check corresponding to Defendant's Tidymates product, and an "X" corresponding to the "National Leading Brands."

28.     This portion of the Tidymates Difference Image is intended to communicate to the target consumer audience that the products encompassed under this "National Leading Brand" umbrella (which, as mentioned above, would include products sold by Kimberly-Clark under its famous Scott® and Cottonelle® brands) contain "known harmful preservatives."

29.     On another subpage of the www.buytrio.com website, Defendant similarly states that it "avoid[s using] nasty preservative chemicals" in its Tidymates product, while "[o]ther wipe brands continue to use nasty preservative chemicals, despite the allergic outbreaks and the cancer-causing evidence associated with them." Below is a true and correct copy of that language as it appears on Defendant's website:

> Other wipe brands continue to use nasty preservative chemicals, despite the allergic outbreaks and the cancer-causing evidence associated with them.
>
> Tidymates® lab tested formula is free from the following preservative chemicals:
> - Formaldehyde
> - (MCI or CMIT) – Methylchloroisothiazolinone
> - ( MI or MIT ) – Methylisothiazolinone

30.     The above statements are false, materially misleading, and likely to cause consumer confusion.  Kimberly-Clark's flushable wipes do not contain "known harmful preservatives."  Nor do Kimberly-Clark's flushable wipes use "nasty preservative chemicals" that are "associate[d]" with "allergic outbreaks" or "cancer."

### Defendant Falsely Claims That Kimberly-Clark's Flushable Wipes Are Not "Safe" For Sewer And Septic Systems

31.     A second factor listed in the same chart included in the Tidymates Difference Image shown above in paragraph 26 is whether the product has been "Independently tested as SAFE for sewer and septic systems." Defendant places a check corresponding to the Tidymates brand, and an "X" corresponding to the "National Leading Brands."

32.     Lower on the webpage is a video that also purports to compare how quickly Defendant's wet wipes "break up" (i.e., disperse in water) vis-à-vis a "Leading National Brand." After purporting to show that the Tidymates product disperses quicker, the video states that "[n]o flushable wipe should ever clog your plumbing."

33.     Below are true and correct copies of images that appear in the referenced video available to be viewed on Defendant's www.buytrio.com website:





34.    The video is intended to communicate to consumers potentially interested in purchasing flushable wipes that if they choose to purchase and use flushable wipes manufactured by another "Leading National Brand" (including Kimberly-Clark's Cottonelle® or Scott® wipes), they run a comparatively higher risk that such wipes will clog their plumbing system than if they instead purchase and use Defendant's wet wipes.

35.    The January 20, 2017 investor presentation appears to indicate that this video compares the Tidymates product to a Hydraspun-branded wipe, which is not a Kimberly-Clark product.  **See Exhibit A at 28.**  This advertising message is deceptive and materially misleading

because a significant number of consumers would be likely to understand the term "Leading National Brand" to refer to popular brands like Cottonelle® or Scott® and not Hydraspun, which is not famous or well known.  On information and belief, a significant number of consumers would be likely to believe that the video shows a test involving a Kimberly-Clark product.

36.     These statements are false, materially misleading, and likely to cause consumer confusion. Kimberly-Clark's flushable wipes have, at all times, satisfied the guidelines established by the International Nonwovens and Disposables Association (INDA), a non-profit association that has developed standards for assessing whether a product is flushable.  Additionally, Kimberly-Clark has regularly assessed the performance of its flushable wipes on metrics that go beyond those in the INDA guidelines, such as through strength loss testing and by studying their behavior in laboratory and real-world conditions, such as toilets, drain lines, in sewage pumps, and in septic tanks. This testing demonstrates that Kimberly-Clark's flushable wipes are "safe for sewer and septic systems" and will not "clog your plumbing."

37.     Kimberly-Clark's flushable wipes are characterized by a unique and patented chemistry that works to weaken the wipes after they have been flushed.  Like toilet paper, but unlike baby wipes, the fibers in Kimberly-Clark's flushable wipes are comprised of only wood pulp—not polypropylene or other plastics or synthetic fibers.  And in contrast to synthetic fibers, wood pulp is readily capable of being digested through the anaerobic/aerobic processes that characterize many wastewater treatment systems.  Kimberly-Clark's manufacturing process uses a cationic binder chemistry to bind the fibers together (using ionic bonds) in the flushable wipes so that they remain strong when wet in the package and when a consumer wipes him or herself with them.  Yet, the ionic bonds that Kimberly-Clark employs have a water-based trigger.  This causes the wipes to lose strength once placed in water, such as when they are disposed of in the

toilet.  Because they lose strength very quickly once introduced into water, Kimberly-Clark's flushable wipes break into pieces as they move through the sewage system and thereby avoid clogging or harm to the system.

### *Defendant Falsely Claims That It Is Unclear Whether Kimberly-Clark's Products Are "Sustainably" Sourced*

38.     A third factor listed in the same chart included in the Tidymates Difference Image shown above in paragraph 26 is whether the products are "DERIVED from sustainable resources." The chart places a check corresponding to the Tidymates brand, and a "?" corresponding to the "National Leading Brands."

39.     This factor communicates the message that it is, at best, unclear whether "National Leading Brands" (including Kimberly-Clark's products sold under the Scott® and Cottonelle® brand names) are manufactured using sustainable resources.  A significant number of viewers would likely understand this image to mean either that Kimberly-Clark products are not derived from sustainable resources, or that Kimberly-Clark has not informed consumers about whether its products are derived from sustainable resources.

40.     Below is a true and correct image of Scott® Flushable wipes packaging, which states that "100% of fibers [contained in the product are] derived from sustainable resources" and that the fibers are "100% plant sourced":





41.    Defendant's statement is false, materially misleading, and likely to cause consumer confusion. As shown above, Kimberly-Clark's products clearly state that the constituent fibers are derived from sustainable resources.   In addition, the fibers used to make Kimberly-Clark's flushable wipes have been independently certified by the Forest Stewardship Council—an

organization dedicated to promoting sustainable forestry worldwide—as being sustainably sourced.

### *The Foregoing False Negative Statements By Defendant About Plaintiff's Products Have All Caused Plaintiff to Suffer Competitive Harm*

42.     Consumers logically and foreseeably distinguish between flushable wipes products based on considerations about whether, among other things, the product sold under a certain brand name:

> a.     is safe for personal use;
>
> b.     will damage or destroy the sewer or septic systems; and
>
> c.     is derived from sustainable resources.

43.     Defendant's intentional negative misrepresentations with respect to Kimberly-Clark's products on all of the foregoing points are intended to deceive consumers about issues that are core to their decision whether to buy one brand of flushable wipes over another.

44.     These false and misleading statements have harmed Kimberly-Clark in several ways.  First, these false statements are plainly intended to divert—and, on information and belief, have in fact diverted—actual consumer sales of flushable wipes products from Kimberly-Clark to Defendant.  Furthermore, these false statements about the health and safety of Kimberly-Clark's products have also inflicted a more general injury to Kimberly-Clark's hard-earned brand reputation, and undercut its goodwill among consumers—key aspects of brand identity which Kimberly-Clark has carefully cultivated over many years, and at great expense.

### DEFENDANT HAS ALSO PUBLICLY DISSEMINATED FALSE POSITIVE STATEMENTS ABOUT ITS OWN PRODUCTS

45.     On its www.buytrio.com website, Defendant makes various false and misleading

*positive* statements about *its own* products—all of which are similarly intended to redirect and, on information and belief, have in fact redirected—sales of flushable wipes from Kimberly-Clark to Defendant.

### *Defendant Falsely Claims That Its Tidymates Product Is "Made in the U.S.A."*

46.     Defendant claims on that website that its wet wipe products are "Made in the U.S.A."  Below is a true and correct image of this language, obtained from the homepage of the www.buytrio.com website:



47.     This claim about domestic product origin is flatly refuted by Defendant's own publicly-available January 2017 investor presentation—which instead brags about a global logistics network that sources wipes from Sweden and packages the product in China.  Defendant is therefore attempting to capitalize off of domestic consumer patriotism—to Kimberly-Clark's competitive detriment—when in truth it is actually saving money by using foreign global competitors to manufacture and package its wet wipes, and then simply lying about the true origin of its products to consumers on the back end.

48.     Below is a true and correct image of a slide contained in Defendant's January 20, 2017 investor presentation, **Exhibit A at 32**:



49.     Below is a true and correct image from January 20, 2017 investor presentation, which shows that Defendant's products are "FOB China."  **Exhibit A at 9.** Upon information and belief, "FOB" is an abbreviation for "Free On Board" and is commonly understood as a term of art in international shipping that is used to designate whether a seller or a buyer is responsible for paying to ship goods and who owns them and is responsible for any damages sustained while in international transit.



50.     On information and belief, the wipes are first manufactured in Connecticut or Europe.  They are then exported in a master roll to a facility in China. Once in China, the master roll is cut into individual wipes and packaged for sale.

51.     The manufacturing steps taken in China are critical because a consumer will not purchase a master roll for their own personal use.

52.     Accordingly, as per materials that (on information and belief) *Defendant itself created in an attempt to attract investors*, the "Made in the U.S.A." product origin claims that Defendant prominently and proudly displays on its website are in fact false and materially misleading, because Defendant *actually* cuts and packages the wipes at a facility in China.

53.     The United States Federal Trade Commission's *Complying with the Made in the USA Standard* report advises "the Commission has required that a product advertised as Made in USA be 'all or virtually all' made in the U.S." The Commission further advises that "'[a]ll or

virtually all' means that all significant parts and processing that go into the product must be of U.S. origin. That is, the product should contain no—or negligible—foreign content."   The Commission's report is publicly available at https://www.ftc.gov/tips-advice/business-center/guidance/complying-made-usa-standard.

54.     Furthermore, it is the FTC—not the U.S. Customs and Border Protection Agency ("Customs")—that determines whether a company may lawfully advertise a product as being "Made in the USA."   Customs enforces "the requirement that imported goods be marked with a foreign country of origin." *Id.* As explained on the FTC's website, however, "even if Customs determines that an imported product does not need a foreign country-of-origin mark, it is not necessarily permissible to promote that product as Made in USA. The FTC considers additional factors to decide whether a product can be advertised or labeled as Made in USA." *Id.*

55.     These additional factors include whether the "product's final assembly or processing" takes place in the United States, as well as "how much of the product's total manufacturing costs can be assigned to U.S. parts and processing, and how far removed any foreign content is from the finished product."   *Id.*

56.     Defendant cannot satisfy the standard articulated by the Commission because it cannot prove that all or virtually all parts and processing that go into its product are of U.S. origin.

57.     As DUO LLC's President testified in a different case, the final processing takes place in China, where the wipes are cut into individual pieces and packaged for sale.   The cost of the processing that takes places in China is significant. He further testified that the processing that

occurs in China is "critical" because "people won't buy a master roll of material for their own personal consumption. They are going to buy the end product," which is completed in China.[1]

### *Defendant Falsely Claims That Its Tidymates Product Is "3x More Flushable"*

58.     On its website, Defendant also claims that its Tidymates wipes are "3x more flushable than the leading brands."  But this claim is both unsubstantiated and deceptive—in fact, Defendant's wipes are *not* "3x more flushable" than the flushable wipes sold under Kimberly-Clark's brands.

59.     Below is a true and correct copy of an image obtained from the home page of Defendant's www.buytrio.com website, which states that Defendant's Tidymates product has "Superior Performance and Flushability" and is "Independently Proven To Be 3x More Flushable Than Leading National Brands":



60.     The advertising message above does not disclose who the "Leading National Brands" referenced are.  The claim appears to be based on the testing described in paragraphs 32-35, which disclose tests comparing Defendant's product to Hydraspun.   This advertising message

---

[1] This testimony is publicly available.  *See Yaros et al. v. Kimberly-Clark Corp.,* ECF No. 58-6, 17-cv-1159 (S.D. Cal.).

is deceptive and materially misleading because a significant number of consumers would be likely to understand the term "Leading National Brand" to refer to popular brands like Cottonelle® or Scott® and not Hydraspun, which is not famous or well known.  On information and belief, a significant number of consumers would be likely to believe that the video shows a test involving a Kimberly-Clark product.

61.     This advertising message is also deceptive and materially misleading because Defendant does not define what "3x more flushable" means or disclose the basis for this claim. On information and belief, Defendant is basing its flushability claim solely off of the slosh box disintegration test, which is only one measure of flushability.

62.     INDA has identified seven key tests relevant to measuring flushability:

     i)      Toilet and Drain-line Clearance Test;

     ii)     Slosh Box Disintegration Test;

     iii)    Household Pump Test;

     iv)    Settling Test;

     v)     Aerobic (A) Biodisintegration / (B) Biodegradation Tests;

     vi)    Anaerobic (A) Biodisintegration / (B) Biodegrataion Tests;

     vii)   Municipal Sewage Pump Test;

63.     Upon information and belief, testing of the seven INDA criteria will definitively demonstrate that Defendant's products are not 3x more "flushable" than Kimberly-Clark's products.

***Defendant Falsely Claims That Its Tidymates Product Is***

***"Good For Your Plumbing And The Environment"***

64.     Defendant also claims on its website that its Tidymates product is beneficial for both the plumbing system and the environment.  Once again, this statement is deceptive and materially misleading on its face—Defendant provides absolutely no evidence that anything about its wipes affirmatively improves *either* a consumer's plumbing system *or* the general environment (because no such evidence exists).

65.     Below is a true and correct image obtained from Defendant's www.buytrio.com website, which states that Defendant's Tidymates product is "Good For Your Plumbing And The Environment":



66.     This statement is false, materially misleading, and likely to cause consumer confusion because Defendant's product is not *affirmatively* good for either the sewer system or for the general environment.

***The Foregoing False Positive Statements By Defendant About Its Own Products Have All***

***Caused Kimberly-Clark to Suffer Competitive Harm***

67.     Consumers logically and foreseeably distinguish between flushable wipes products based on considerations about whether, among other things, the products sold under a certain brand name:

    a.     are domestically produced and/or sourced;

    b.     will harm the sewer or septic systems; and

    c.     will affect the environment.

68.     Defendant's false positive misrepresentations with respect to the alleged comparative benefits of its own products vis-à-vis Kimberly-Clark's products on all of the foregoing points are intended to deceive consumers about issues that are core to their decision whether to buy one brand of flushable wipes over another.

69.     Accordingly, on information and belief, these false and deceptive positive statements about Defendant's own wet wipes have *also* independently injured Kimberly-Clark, by inducing a subset of consumers who would have otherwise purchased Kimberly-Clark's flushable wipes to instead purchase Defendant's product.

**DEFENDANT IS INFRINGING KIMBERLY-CLARK'S PATENTED**

**WET WIPES TECHNOLOGY TO KIMBERLY-CLARK'S DETRIMENT**

***Overview of Kimberly-Clark's '262 Patent***

70.     United States Patent No. 6,649,262 ("the '262 Patent")—entitled, "Wet Roll Having Uniform Composition Distribution"—was duly and legally issued by the U.S. Patent and Trademark Office ("USPTO") on November 18, 2003, following a full and fair examination.  The inventors of the '262 Patent assigned all rights, title, and interest in the '262 Patent to Kimberly-

Clark Worldwide, Inc.  Kimberly-Clark Global Sales, LLC is the current assignee of the '262 Patent and holds the sole right to sue for, collect, and/or receive past, present, and future damages for infringement of the '262 Patent.  A true and correct copy of the '262 Patent is attached as "**Exhibit B**," and incorporated herein by reference.

71.     The '262 Patent has 22 issued claims.  Independent claims 1, 10, and 20 each claim a wet coreless roll, while independent claim 22 claims a wet roll.  Claims 2–9 are dependent claims depending from claim 1, and claims 11–19 are dependent claims depending from claim 10. Independent claim 21 claims a method of winding a wet web.

72.     Claim 1 of the '262 Patent reads as follows:

> 1.  A wet coreless roll, comprising:
>
> a basesheet;
>
> a salt; and
>
> at least one preservative;
>
> wherein the variability of the salt throughout the wet roll is less than about 20%, and the variability of each preservative throughout the wet roll is less than about 60%.

73.     The '262 Patent teaches that the basesheet may be of any type known to those skilled in the art, including—for example—a tissue or towel basesheet or a non-woven basesheet. *See* **Exhibit B**, col. 6, lines 11–17.

74.     The salt of claim 1 of '262 Patent may be organic or inorganic.

75.     The '262 Patent teaches that at least one preservative of claim 1 include compounds such as, for example, IPBC, DMDM Hydantoin, malic acid, or other preservatives.  *See* **Exhibit B**, col. 4, lines 27–33.

76.     The variability of the distribution of an ingredient is defined as the standard deviation as a percentage of the average mean value for all the data points obtained during a test. For example, if the mean value of salt concentration is 4.40 with a standard deviation of 0.11, then the standard deviation is 2.5% of the mean value.  Thus, the salt values would have a variability of 2.5%.  *See* **Exhibit B**, col. 12, lines 35–41.

77.     Claim 21 of the '262 Patent reads as follows:

21.  A method of winding a wet web, comprising:

providing a wet web of material;

applying a wetting solution to the web to produce a wet web, the wetting solution comprising at least about 0.5% of a salt; and

winding the wet web into a wet roll;

wherein the variability of the salt throughout the wet roll is less than about 20%.

78.     The '262 Patent teaches that the salt is considered an additive when present at a level of at least about 0.5% (more preferably at least about 1.0%).  *See* **Exhibit B**, col. 12, lines 46–51.

79.     Figure 1 of the '262 Patent (reproduced below) is a diagrammatic view of an exemplary apparatus that may be used to wind a wet web as described in the '262 Patent:



80.     As depicted in Figure 1 of the '262 Patent, a web may be dispensed from a parent roll **4**, which is delivered to wetting and winding apparatus **1** by a series of rollers (**8**, **10**, **12**, **14**, **22**, **24**).   Wetting and winding apparatus **1** is comprised of wetting apparatus **35** and winding apparatus **41**, both of which may be contained in containment box **28** to prevent contamination of the wet roll.

81.     Kimberly-Clark has in the past, and continues to, practice the '262 Patent.

### *Overview of Kimberly-Clark's '502 Patent*

82.     United States Patent No. 7,179,502 ("the '502 Patent")—entitled, "Wet Roll Having Uniform Composition Distribution"—is a divisional of the '262 Patent and was duly and legally issued by the USPTO on February 20, 2007, following a full and fair examination.   The inventors of the '502 Patent assigned all rights, title, and interest in the '502 Patent to Kimberly-Clark World Wide, Inc., by way of their assignments recorded in the '262 Patent.   Kimberly-Clark Global Sales, LLC is the current assignee of the '502 Patent and holds the sole right to sue for, collect, and/or receive past, present, and future damages for infringement of the '502 Patent.   A

true and correct copy of the '502 Patent is attached as "**Exhibit C**," and incorporated herein by reference.

83.     The '502 Patent has 21 issued claims.  Independent claim 1 claims a method of winding a wet web.  Claims 2–5 are dependent claims depending from claim 1.  Independent claims 6 and 12 each claim a method of making wet rolls.  Claims 7–11 are dependent claims depending from claim 6, and claims 13–21 are dependent claims depending from claim 12.

84.     Claim 12 of the '502 Patent reads as follows:

12.  A method of making wet rolls, comprising:

providing a web of material;

applying a wetting solution to the web to produce a wet web, the wetting solution comprising a salt and at least one preservative; and

winding the wet web into a wet roll;

wherein the variability of the salt throughout the wet roll is less than about 10%, and the variability of each preservative throughout the wet roll is less than about 50%.

85.     Figure 1 of the '502 Patent (identical to Fig. 1 of the '262 Patent, described above in paragraphs 76-77) is a diagrammatic view of an exemplary apparatus that may be used to wind a wet web as claimed in the '502 Patent.

86.     Kimberly-Clark has in the past, and continues to practice the '502 Patent.

87.     Collectively, the '262 Patent and the '502 Patent are referred to hereafter as the "Patents-in-Suit."

*Overview of Defendant's Wipes*

88.     Defendant sells flushable wipes under the "Tidymates" brand name ("Defendant's Wipes").

89.     Defendant's Wipes comprise a basesheet, and are sold as a wet coreless roll of wet wipes—*i.e.*, they lack a core around which the wipes are wrapped, as compared to a normal roll of toilet paper, which has a core made of a different material from the individual sheets of toilet paper. According to the label included on Defendant's Wipes, the basesheet of Defendant's Wipes are formed of cellulose.  Defendant's wetting solution ("Formula") is comprised of purified water and less than 1% of Sodium benzoate, Diazolidinyl Urea, Phospholipid EFA, Phospholipid PTM, Disodium EDTA, Citric Acid, and Aloe Barbadensis Leaf Juice.

*Kimberly-Clark's Testing of Defendant's Wipes Has Revealed That*

*They Infringe Kimberly-Clark's '262 and '502 Patents*

90.     Through the ordinary course of commerce, Kimberly-Clark obtained two sample rolls of Defendant's Tidymates wet wipes ("Sample Roll A" and "Sample Roll B").  Kimberly-Clark has tested both Sample A and Sample B for preservative and salt variability, as presented in the claims of the Patents-in-Suit.

91.     For both Sample Roll A and Sample Roll B, the following general method— described in the Patents-in-Suit—was followed to prepare the samples for testing:  Five sheets from the beginning of the roll, the middle and the end of the roll were folded and cut into three equal parts resulting in a sample for the film side, middle and container side for each. Solution from each individual sample was then expressed using a 10 mL disposable syringe and collected in a 15 mL glass vial.  *See* **Exhibit B**, col. 11, lines 39–54.

92.     Once prepared for testing, Defendant's Wipes were tested for sodium benzoate (a sodium salt of benzoic acid), and diazolidinyl urea (a preservative). Concentrations of the salt and preservative for each sample roll were then ascertained using generally accepted and accurate analytical chemistry methods.  *Id.* at 2.  The results of those tests are presented below:

|  | Sample Roll A | | Sample Roll B | |
| --- | --- | --- | --- | --- |
|  | Diazolidinyl Urea | Sodium Benzoate | Diazolidinyl Urea | Sodium Benzoate |
| **Mean Concentration (ppm)** | 3210 | 2850 | 2340 | 2240 |
| **Std. Dev. (ppm)** | 98.0 | 57.9 | 48.6 | 41.9 |
| **Variability** | 3.1% | 2.0% | 2.1% | 1.9% |

93.     The variability of salt (sodium benzoate) throughout Sample Roll A was 2.0%, and the variability of preservative (diazolidinyl urea) throughout Sample Roll A was 3.1%.

94.     The variability of salt (sodium benzoate) throughout Sample Roll B was 1.9%, and the variability of preservative (diazolidinyl urea) throughout Sample Roll B was 2.1%.

## **FIRST CLAIM FOR RELIEF**

*(False Advertising under 15 U.S.C. § 1125(a))*

95.     Kimberly-Clark hereby repeats and re-alleges each and every general allegation of the Complaint above, as though fully set forth herein.

96.     Defendant sells its Tidymates system through an online website that it owns and operates (www.buytrio.com), as well as through various third-party retailers including Amazon and Staples.  Defendant has made sales of its Tidymates product through interstate commerce since 2013, including, upon information and belief, into this District.

97.     The false, misleading, and deceptive negative statements about Kimberly-Clark's flushable wipes that Defendant has disseminated and continues to disseminate to the public through its www.buytrio.com website—which are specifically detailed above and incorporated

herein by reference—are plainly intended to, and have in fact, deceived domestic consumers into believing that flushable wipes sold under Kimberly-Clark's own house brands:  i) use "harmful" preservatives and chemicals associated with serious medical conditions; ii) are not safe for sewer and septic systems; and/or iii) are not derived from sustainable resources.

98.     The false, misleading, and deceptive positive statements about Defendant's own wet wipes Defendant has disseminated and continues to disseminate to the public through its www.buytrio.com website—which are specifically detailed above and incorporated herein by reference—are plainly intended to, and have in fact, deceived domestic consumers into believing that Defendant's Tidymates-branded system is: i) "Made in the U.S.A."; ii) more "flushable" than Kimberly-Clark's flushable wipes; and/or iii) better for consumers' plumbing and/or the general environment than Kimberly-Clark's flushable wipes.

99.     Each of these false, misleading, and deceptive statements addresses issues that are logically and foreseeably material to domestic consumers' purchasing decisions in this realm. Defendant's President has specifically acknowledged that consumers buy wipes because they like what Defendant has to say about its products, including that Defendant's products contain certain ingredients, and that Defendant's advertising is designed to portray Defendant's product as a safe, dependable, flushable wipe.

100.     Each of these false, misleading, and deceptive statements has already injured, and will continue to injure, Kimberly-Clark—both directly by diverting sales from Kimberly-Clark's products to Defendant, and indirectly by impairing the general goodwill and reputation of Kimberly-Clark's Cottonelle® and Scott® marks which Kimberly-Clark has cultivated over many years at great expense.

101.    These false, misleading, and deceptive statements have both individually and collectively caused irreparable injury to Kimberly-Clark—including through loss of general goodwill and reputational injury—and in the absence of an injunction preventing their further dissemination they will continue to do so, leaving Kimberly-Clark with no adequate remedy at law.

102.    By reason of the foregoing, in addition to being entitled to recover any and all damages caused by reason of Defendant's aforesaid acts (in an amount to be proven at trial), Kimberly-Clark is now also entitled to permanent injunctive relief against Defendant restraining any and all further acts of false advertising and unfair competition and requiring Defendant to correct its false and misleading statements.

## SECOND CLAIM FOR RELIEF

*(Patent Infringement of '262 Patent under 35 U.S.C. § 271)*

103.    Kimberly-Clark hereby repeats and re-alleges each and every general allegation of the Complaint above, as though fully set forth herein.

104.    Defendant sells and/or offers to sell Defendant's Wipes to domestic consumers located in the United States.

105.    Defendant further directs and/or contributes to the use, sale, and/or offer to sell Defendant's Wipes in the United States through partnerships with third-parties including Staples and Amazon.  Defendant also advertises an "Authorized Affiliate Program" on the subpage of a commercial website that it owns and operates (located at URL http://buytrio.com/partnerships/), which states that "[p]roducts available under this program are intended to be made for sale to individual customers in the lower 48 states only."

106.     On information and belief, Defendant manufactures or directs others to manufacture Defendant's Wipes abroad, including in both Sweden and China.  *See* **Exhibit A** at 9, 32.  On information and belief, Defendant imports at least some of its wipes manufactured abroad to the United States, for the purpose of selling them to domestic consumers.  *Id.*

107.     Defendant's Wipes meet each element of at least claim 1 of the '262 Patent, as arranged in the claim:

        a.     Defendant's Wipes are sold as a wet coreless roll;

        b.     Defendant's Wipes comprise a cellulosic basesheet;

        c.     Defendant's Wipes comprise a salt—sodium benzoate;

        d.     Defendant's Wipes comprise at least one preservative—diazolidinyl urea; wherein

        e.     The variability of the sodium benzoate throughout Defendant's Wipes is less than about 20%—being about 1.9% to 2.0%—and the variability of diazolidinyl urea throughout Defendant's Wipes is less than about 60%—being about 2.1% to 3.1%.

108.     Accordingly, Defendant has been and is currently still directly infringing at least claim 1 of the '262 Patent under 35 U.S.C. § 271(a), by offering to sell and/or selling Defendant's Wipes within the United States—including within this District—directly or through intermediaries and/or subsidiaries, and/or by importing Defendant's Wipes into the United States without authority.

109.     On information and belief, Defendant's Wipes are a product made by a process meeting each element of *at least* claim 21 of the '262 Patent, as arranged in the claim:

a.    On information and belief, Defendant's Wipes are made by a method of winding a wet web;

b.    On information and belief, a wet web of material is provided—cellulosic basesheets;

c.    On information and belief, a wetting solution is applied to the web to produce a wet web, the wetting solution comprising at least about 0.5% of a salt—sodium benzoate;

d.    On information and belief, the wet web is wound into a wet roll;

e.    Wherein the variability of the sodium benzoate throughout Defendant's Wipes is less than about 20%—being about 1.9% to 2.0%.

110.    On information and belief, Defendant manufactures Defendant's Wipes in China. As such, Defendant has been and is currently infringing *at least* claim 21 of the '262 Patent under 35 U.S.C. § 271(g) by importing into the United States and by selling and/or offering to sell within the United States a product which is made by a process patented in the United States, without authority. Moreover, Defendant does not materially change the product manufactured in China by subsequent processes, nor is the product a trivial and nonessential component of another product.

111.    To the extent Defendant employs third-party merchants to sell Defendant's Wipes, such third-party merchants also directly infringe *at least* claims 1 and 21 of the '262 Patent under 35 U.S.C. § 271(a) and 271(g), and Defendant has thereby been and is currently indirectly infringing, by way of active inducement with specific intent under 35 U.S.C. § 271(b), *at least* claims 1 and 21 of the '262 Patent. On information and belief, Defendant has had knowledge of the '262 Patent since at least January 20, 2017. *See* **Exhibit A at 15**. As illustrated by that document, Defendant had actual knowledge that Kimberly-Clark holds patents in the area in which

Defendant seeks to sell its wipes/wipe dispensers.  *Id.*  As such, Defendant actively induces its third-party merchants to directly infringe *at least* claims 1 and 21 of the '262 Patent by offering to sell and/or selling Defendant's Wipes in this District and elsewhere in the United States and/or importing Defendant's Wipes into the United States.  Defendant knows that its third-party merchants are directly infringing *at least* one claim of the '262 Patent.  Defendant has also demonstrated specific intent to encourage its third-party merchants to infringe the claims of the '262 Patent by hosting links to the third-party merchants' webpages featuring Defendant's Wipes on Defendant's own website, www.buytrio.com.  These active steps, and other active steps to be uncovered during discovery in this action, performed in the United States and within this District, were undertaken with the purpose of encouraging direct infringement—and as such, they evidence an affirmative intent that third-party merchants should sell, offer to sell, and/or import Defendant's Wipes that infringe the '262 Patent and/or that are a product made by a process which infringes the '262 Patent.

112.    As a result of Defendant's unlawful infringement of the '262 Patent, Kimberly-Clark has suffered and will continue to suffer damages in an amount to be proven at trial. Kimberly-Clark is entitled to recover from Defendant the damages adequate to compensate for such infringement in the form of both lost profits and a reasonable royalty (which have yet to be determined), together with interest and costs as fixed by the Court.

113.    As noted, Defendant has had knowledge of the '262 Patent at least as of the filing of this Complaint.

114.    Despite Defendant's knowledge of the '262 Patent since at least the filing of this Complaint, and despite Defendant's knowledge that it lacks a license to the '262 Patent, Defendant nevertheless continues to directly infringe the '262 Patent under 35 U.S.C. § 271(a) and § 271(g).

At a minimum, an objectively high likelihood exists that Defendant's continued actions constitute infringement of the '262 Patent.  This infringement is either actually known to Defendant or is so obvious that Defendant should have known about this infringement by no later than the filing of this Complaint.  Despite knowing that its actions constitute infringement of the '262 Patent and/or despite knowing that that there is a high likelihood that its actions constitute infringement, either directly or indirectly, of the '262 Patent, Defendant nevertheless continues its infringing actions, and continues to make, use, sell, offer to sell, and import Defendant's Wipes.

115.     On information and belief, based on the foregoing, Defendant's continued infringement of the '262 Patent is both deliberate and willful.

116.     On information and belief, Defendant will continue to infringe the '262 Patent unless and until it is enjoined by this Court.

117.     Kimberly-Clark has been and will continue to be irreparably harmed by Defendant's ongoing infringement of the '262 Patent such that money damages cannot sufficiently compensate for such irreparable harm.  Unless injunctive relief is granted to enjoin Defendant and its agents, employees, representatives, affiliates, and all others acting in active concert therewith from continuing to infringe the '262 Patent, Kimberly-Clark will continue to be greatly and irreparably harmed.

118.     The '262 Patent is valid and enforceable.

## THIRD CLAIM FOR RELIEF

*(Patent Infringement of '502 Patent under 35 U.S.C. § 271)*

119.     Kimberly-Clark hereby repeats and re-alleges each and every general allegation of the Complaint above, as though fully set forth herein.

120.   On information and belief, Defendant's Wipes are a product made by a process meeting each element of *at least* claim 12 of the '502 Patent, as arranged in the claim:

a.   On information and belief, Defendant's Wipes are made by a method of making wet rolls;

b.   On information and belief, a web of material is provided—cellulosic basesheets;

c.   On information and belief, a wetting solution is applied to the web to produce a wet web, the wetting solution comprising a salt—sodium benzoate—and at least one preservative—diazolidinyl urea;

d.   On information and belief, the wet web is wound into a wet roll;

e.   Wherein the variability of the sodium benzoate throughout Defendant's Wipes is less than about 10%—being about 1.9% to 2.0% —and the variability of diazolidinyl urea throughout Defendant's Wipes is less than about 50%—being about 2.1% to 3.1%.

121.   On information and belief, Defendant manufactures Defendant's Wipes in China. As such, Defendant has been and is currently infringing *at least* claim 12 of the '502 Patent under 35 U.S.C. § 271(g) by importing into the United States and by selling and/or offering to sell within the United States a product which is made by a process patented in the United States, without authority.  Moreover, Defendant does not materially change the product manufactured in China by subsequent processes, nor is the product a trivial and nonessential component of another product.

122.   To the extent Defendant employs third-party merchants to sell Defendant's Wipes, such third-party merchants also directly infringe *at least* claim 12 of the '502 Patent under 35 U.S.C. § 271(g), and Defendant has thereby been and is currently indirectly infringing, by way of

inducement with specific intent under 35 U.S.C. § 271(b), *at least* claim 12 of the '502 Patent.  On information and belief, Defendant has had knowledge of the '502 Patent since at least January 20, 2017.  **See Exhibit A** at 15.  As illustrated by that document, Defendant had actual knowledge that Kimberly-Clark holds patents in the area in which Defendant seeks to sell its wipes/wipe dispensers.  *Id.*  As such, Defendant actively induces its third-party merchants to directly infringe *at least* claim 12 of the '502 Patent by offering to sell and/or selling Defendant's Wipes—including in this District—and elsewhere in the United States and/or by importing Defendant's Wipes into the United States.  Defendant knows and continues to know that its third-party merchants are directly infringing *at least* one claim of the '502 Patent.  Defendant has demonstrated specific intent to encourage its third-party merchants to infringe the claims of the '502 Patent by hosting links to the third-party merchants' webpages featuring Defendant's Wipes on Defendant's own website.  These active steps, and other active steps to be uncovered during discovery in this action, performed in the United States and within this District, were undertaken with the purpose of encouraging direct infringement—and as such, they evidence an affirmative intent that third-party merchants should sell, offer to sell, and/or import Defendant's Wipes that are a product made by a process which infringes the '502 Patent.

123.    As a result of Defendant's unlawful infringement of the '502 Patent, Kimberly-Clark has suffered and will continue to suffer damages in an amount to be proven at trial. Kimberly-Clark is entitled to recover from Defendant the damages adequate to compensate for such infringement in the form of both lost profits and a reasonable royalty (which have yet to be determined), together with interest and costs as fixed by the Court.

124.    As noted, Defendant has had knowledge of the '502 Patent at least as of the filing of this Complaint.

125.    Despite Defendant's knowledge of the '502 Patent since at least the filing of this Complaint, and despite Defendant's knowledge that it lacks a license to the '502 Patent, Defendant nevertheless continues to directly infringe the '502 Patent under 35 U.S.C. § 271(g).  At a minimum, an objectively high likelihood exists that Defendant's continued actions constitute infringement of the '502 Patent.  This infringement is either actually known to Defendant or is so obvious that Defendant should have known about this infringement by no later than the filing of this Complaint.  Despite knowing that its actions constitute infringement of the '502 Patent and/or despite knowing that that there is a high likelihood that its actions constitute infringement, either directly or indirectly, of the '502 Patent, Defendant nevertheless continues its infringing actions, and continues to sell, offer to sell, and import Defendant's Wipes.

126.    On information and belief, based on the foregoing, Defendant's continued infringement of the '502 Patent is both deliberate and willful.

127.    On information and belief, Defendant will continue to infringe the '502 Patent unless and until it is enjoined by this Court.

128.    Kimberly-Clark has been and will continue to be irreparably harmed by Defendant's ongoing infringement of the '502 Patent such that money damages cannot sufficiently compensate for such irreparable harm.  Unless injunctive relief is granted to enjoin Defendant and its agents, employees, representatives, affiliates, and all others acting in active concert therewith from continuing to infringe the '502 Patent, Kimberly-Clark will continue to be greatly and irreparably harmed.

129.    The '502 Patent is valid and enforceable.

## FOURTH CLAIM FOR RELIEF

*(Deceptive Trade Practices under 6 Del C. § 2531 et. seq.)*

130.    Kimberly-Clark hereby repeats and re-alleges each and every general allegation of the Complaint above, as though fully set forth herein.

131.    Defendant sells its Tidymates system through an online website that it owns and operates (www.buytrio.com), as well as through various third-party retailers such as Amazon and Staples.   The interactive online website offers to sell products to consumers throughout the country, including consumers in Delaware. Upon information and belief, consumers in Delaware have been deceived by false statements that are displayed on and publicly disseminated through Defendant's website.  On information and belief, Defendant has sold its products to consumers in Delaware.

132.    Defendant has disparaged Kimberly-Clark's goods by false or misleading representation of fact in violation of 6 Del C. § 2532(a)(8). The false, misleading, and deceptive negative statements about Kimberly-Clark's flushable wipes that Defendant has disseminated to the public through its www.buytrio.com website—which are specifically detailed above and incorporated herein by reference—are plainly intended to, and have in fact, deceived consumers based in Delaware into believing that flushable wipes sold under Kimberly-Clark's own house brands:  i) use "harmful" preservatives and chemicals associated with serious medical conditions; ii) are not safe for sewer and septic systems; and/or iii) are not derived from sustainable resources.

133.    Defendant has also falsely claimed that its own products are "Made In The U.S.A," when in fact its products originate in Sweden and China, in violation of 6 Del C. § 2532(a)(4).

134.    Each of these false, misleading, and deceptive statements addresses issues that are logically and foreseeably material to domestic consumers' purchasing decisions in this realm.

135.    Each of these false, misleading, and deceptive statements has already injured, and will continue to injure, Kimberly-Clark—both directly by diverting sales from Kimberly-Clark's products to Defendant, and indirectly by impairing the general goodwill and reputation of Kimberly-Clark's Cottonelle® and Scott® marks which Kimberly-Clark has cultivated over many years at great expense.

136.    These false, misleading, and deceptive statements have both individually and collectively caused irreparable injury to Kimberly-Clark—including through loss of general goodwill and reputational injury—and in the absence of an injunction preventing their further dissemination they will continue to do so, leaving Kimberly-Clark with no adequate remedy at law.

137.    By reason of the foregoing, in addition to being entitled to recover any and all damages caused by reason of Defendant's aforesaid acts (in an amount to be proven at trial), Kimberly-Clark is now also entitled to permanent injunctive relief against Defendant restraining any and all further acts of false advertising and unfair competition and requiring Defendant to correct its false and misleading statements. *See* 6 Del C. § 2533.

## JURY DEMAND

Kimberly-Clark demands that all of its claims be tried by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff now respectfully requests the following relief:

A.    The entry of judgment on all claims of the Complaint, in favor of Kimberly-Clark and against Defendant.

B.    The entry of a preliminary and a permanent injunction, pursuant to 35 U.S.C. § 283, 15 U.S.C. § 1116, and/or 6 Del. C. § 2533(a), enjoining Defendant, and all those engaged in active concert or participation with Defendant (including, but not limited to, Defendant's officers, agents,

wholesalers, distributors, retailers, employees, representatives, related companies, affiliates, successors, assigns and contracting parties), from:

    i.    making any false, misleading, or deceptive negative statements concerning Kimberly-Clark's products, including but without limitation any statements to the effect that Kimberly-Clark's flushable wipes:

        1    contain or use any "harmful" or "nasty" preservatives and/or chemicals, including without limitation any that are associated with any serious human health conditions;

        2    will "clog your plumbing," or are not "safe for sewer and septic systems";

        3    are not derived from "sustainable" resources;

    ii.    making any false, misleading, or deceptive statements concerning Defendant's own products, including without limitation any statements to the effect that its products are:

        1    "Made in the U.S.A.";

        2    more "flushable" than Kimberly-Clark's flushable wipes;

        3    better for consumers' plumbing and/or the general environment than Kimberly-Clark's flushable wipes; and/or

    iii.    manufacturing, distributing, shipping, importing, selling offering, or otherwise making available to the public in any way, any flushable wet wipes or related products that infringe on either or both of the '262 or '502 Patents held by Kimberly-Clark.

C.     The entry of an order directing Defendants to file with the Court, and serve on counsel for Kimberly-Clark within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied such injunction;

D.     An award to Kimberly-Clark of any and all compensatory, special, punitive/treble, and statutory damages allowed by law, pursuant to 15 U.S.C. § 1117, 35 U.S.C. §284, and/or 6 Del. C. § 2533;

E.     An award to Kimberly-Clark of all reasonable attorney's fees, along with the costs and disbursements incurred herein as a result of Defendant's willful infringement, permitted or authorized under 15 U.S.C. § 1117, 35 U.S.C. § 285, 6 Del. C. § 2533(b), or any other applicable statute or case law; and

F.     Any other and further relief that the Court may deem proper.

ASHBY & GEDDES

*/s/ Steven J. Balick*

_____
Steven J. Balick (#2114)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888
sbalick@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Plaintiffs*

*Of Counsel:*
Mark Reiter
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Ave,
Dallas TX 75201-6912
(214) 698-3360

Howard Hogan
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Ave NW
Washington DC 20009
(202) 887-3640

Dated:  August 13, 2019